IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANITRA J. SUMMERS,<br><br>   Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>   Defendant. | Case No.: 1:10-cv-1514 JLT<br><br>ORDER DIRECTING REMAND PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF ANITRA SUMMERS AND AGAINST DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY |

Anitra Joy Summers ("Plaintiff") asserts she is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred evaluation her credibility and weighing the medical evidence. Therefore, Plaintiff seeks judicial review of the administrative decision denying her claim for benefits. For the reasons set forth below, the Court remands this matter for further proceedings.

**PROCEDURAL HISTORY**[1]

Plaintiff filed applications for disability insurance benefits and supplemental security income on May 5, 2006, alleging disability beginning September 16, 2005. AR at 140-51, 166. The Social Security Administration denied her claims initially and upon reconsideration on December 19, 2007. *Id.* at 84-96. After requesting a hearing, Plaintiff testified before an ALJ on June 3, 2009. *Id.* at 10.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on September 4, 2009. AR at 7-19. Plaintiff requested a review by the Appeals Council of Social Security, which denied review of the ALJ's decision on June 18, 2010. *Id.* at 1-3. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole must be considered, as "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v.*

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony.  20 C.F.R. §§ 404.1527, 404.1529, 416.927.

A.   Relevant Medical Evidence

   *Treatment notes*

In February 2006, Plaintiff began treatment at Charis Counseling Associates for depression and anxiety.  AR at 279.   Plaintiff reported she sought help to relieve "[f]eelings of guilt from an abortion" and that she had "[d]ifficulty [with] concentration and remembering."  *Id.* at 283.   Also, Plaintiff reported her husband was abusive and caused her to be more depressed.  *Id.* at 279, 287.

On June 14, 2006, Plaintiff was involuntarily hospitalized at Southwest Washington Medical Center for a psychotic episode with hallucinations, paranoia, and delusions.  AR at 318-19.   Plaintiff was diagnosed with psychosis, not otherwise specified.  *Id.* at 322.  During her hospitalization, Plaintiff was observed "out in to [the] hall numerous times crying," yelling intermittently and "talking to people not in [the] room."  *Id.* at 324-25.  A nurse practitioner gave Plaintiff a GAF score of 20.[2]  *Id.* at 329.  Plaintiff attended group therapy, and on June 23, 2006, Plaintiff reported she felt

---

[2] Global Assessment Functioning ("GAF") scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV).  A score of 20 may indicate "[s]ome danger of hurting self or others."  *Id.*

1   "much better," but "continue[d] to experience easy distractability, some disorganized thoughts." *Id.*
2   at 347. On June 23, 2011, Plaintiff reported she wanted to go home because she was concerned
3   about her children, and felt she would be calmer at home. *Id.* at 349. Plaintiff was discharged on
4   June 24, 2011, at which time Dr. James Douglas observed, "[Plaintiff's] thoughts were almost
5   cohesive and content of thought was devoid of any psychotic, manic, or obsessive features. Her
6   mood was anxious. She denied suicidal or homicidal ideation. She denied auditory or visual or
7   tactile hallucinations." *Id.* at 315. Therefore, Dr. Douglas concluded Plaintiff was "discharged in
8   good condition" with a GAF score of 55.[3]   *Id.* at 315, 401.

9        Plaintiff began treatment at Fresno Mental Health in September 2006, which continued
10  through September 2008. AR at 443, 534. Mr. Michael Valenzuela, a licensed social worker,
11  observed Plaintiff's thought content was within normal limits; her short-term memory was fair; and
12  her long-term memory was poor. *Id.* at 448. In addition, Mr. Valenzuela noted Plaintiff was
13  "experiencing depression and paranoia," and gave her a GAF score of 45.[4]  *Id.* at 449. In therapy
14  sessions with Mr. Valenzuela, Plaintiff reported difficulties with her depression, family stressors,
15  auditory hallucinations, and fear of working due to her past emotional breakdown. *See, e.g., id.* at
16  493-94, 537, 547.

17       In April 2009, Plaintiff returned to Fresno Mental Health, where she exhibited poor
18  attention/concentration, slow thought process, poor memory, and impaired judgment. AR at 584-86.
19  Plaintiff reported medicine "helped control clinical depression and hallucinations and paranoia," but
20  "complained of getting easily angered and upset over minor things." *Id.* at 584. In addition, Plaintiff
21  stated she was "unable to study due to depressed mood and stressors" and that her "symptoms
22  prevent her from being able to continue with schooling, access employment, and mak[e] it

---

[3] A GAF score between 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairments in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *DSM-IV* at 34.

[4] A GAF score between 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work . . .)." *DSM-IV* at 34.

4

impossible to meet her goal of self-sufficiency." *Id.* Further, "depression interfere[d] with [her] ability to maintain family and social interactions." *Id.*

*Physician's opinions*

Dr. Greg Hirokawa conducted a comprehensive psychiatric evaluation of Plaintiff on March 22, 2007, at which time he found Plaintiff's "participation effort was fair." AR at 451-55. Plaintiff reported "poor sleep, mood swings, some mild paranoia, and increased irritability." *Id.* at 451. Also, Plaintiff reported depression, which she attributed "to her physical problems, dealing with pain, having financial issues, and feeling guilty for not doing her part." *Id.* Plaintiff informed Dr. Hirokawa that the had been receiving mental health treatment for five months, and believed it was "somewhat helpful." *Id.* at 452. Plaintiff reported she spent a typical day at home "taking care of her 4-year-old," and that she cooked, vacuumed, swept, mopped, and did laundry. *Id.* at 453.

Dr. Hirokawa observed Plaintiff's "[p]sychomotor functioning" and stream of mental activity were "within normal limits" without auditory or visual hallucinations. *Id.* Dr. Hirokawa opined Plaintiff's "symptoms of depression appear to be within the mild range" and "her symptoms of psychosis appear to be in remission." *Id.* at 455. Further, Dr. Hirokawa opined Plaintiff was "mildly limited" in the following abilities: to remember location and work-like procedures; to remember and understand very short and simple or detailed instructions; to maintain attention and concentration; to accept instruction and respond appropriately to criticism; to perform activities within a schedule, maintain regular attendance, and be punctual; and to interact with coworkers. *Id.* In addition, Dr. Hirokawa found Plaintiff's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms [was] mildly limited," but he opined Plaintiff had a "minimal" chance of "emotionally deteriorating in a work environment." *Id.* Dr. Hirokawa gave Plaintiff a GAF score of 65,[5] and he concluded Plaintiff was "able to perform a simple three-step command." *Id.* at 454.

---

[5] A GAF score between 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." *DSM-IV* at 34.

Dr. Rustom Damania performed a consultative physical examination on March 31, 2007.  AR at 456-59.  Plaintiff informed Dr. Damania that she received treatment "for psychosis, depression, and posttraumatic stress."  *Id.* at 457.  Plaintiff said she had a counseling appointment every two weeks and a psychiatrist every four weeks, which she had attended for a year.  *Id.*  Dr. Damania found Plaintiff's coordination, station, and gait were within normal limits.  *Id.* at 458.  Though Plaintiff reported she "hurt all over," Dr. Damania found no tenderness in any of her joints and determined Plaintiff's motor strength was 5/5.  *Id.*  Dr. Damania opined Plaintiff "should be able to stand or walk for six hours" and "can sit for six hours."  *Id.* at 459.  In addition, Dr. Damania found Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally, without postural or manipulative limitations.  *Id.*

On April 10, 2007, Dr. Frye completed a physical residual functional capacity assessment.  AR at 460-64, 486-88.  Dr. Frye opined Plaintiff could lift and/or carry 25 pounds frequently and 50 pounds occasionally, and perform work at the medium exertion level.  *Id.* at 461, 488.  Dr. Frye believed Plaintiff could stand, walk, and sit for about six hours in an eight-hour day.  *Id.*  Further, Dr. Frye found no postural, manipulative, visual, or environmental limitations.  *Id.* at 461-63.  Dr. Frye observed the recent medical evidence suggested her symptoms were under control with her current medication, and that Plaintiff was able to sustain simple, repetitive tasks.  *Id.* at 488.

Dr. Richard Waranch completed a mental residual functional capacity assessment and psychiatric review technique form on May 29, 2007.  AR at 466-85.  Dr. Waranch opined Plaintiff's "mental impairment is severe but not at listing level."  *Id.* at 466.  Dr. Waranch found Plaintiff was not significantly limited in her ability to understand, remember, and carry out very short and simple instructions, and in the ability to sustain an ordinary routine.  *Id.* at 468.  Likewise, he determined Plaintiff was not significantly limited in her ability to make simple work-related decisions, to ask simple questions, request assistance, maintain socially appropriate behavior, and to be aware of normal hazards and take appropriate precautions.  *Id.* at 468-69.  According to Dr. Waranch, Plaintiff was "moderately limited" in the following abilities: to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from

supervisors; and to get along with coworkers or peers without distracting them or exhibiting behavior extremes; and to respond appropriately to changes in the work setting. *Id.* at 468-69. Dr. Waranch believed Plaintiff had moderate difficulty maintaining concentration, persistence, and pace. *Id.* at 482. Therefore, Dr. Waranch opined Plaintiff was "capable of completing simple tasks, getting along with coworkers and supervisors and adapting to changes in the workplace." *Id.* at 470.

On December 12, 2007, Dr. Lavanya Bobba completed a medical evaluation, and noted Plaintiff's entire mental assessment was within normal limits. AR at 530. In addition, Dr. Bobba noted Plaintiff was "pursuing the Cal Works program to go back to employment." *Id.* at 531. Dr. Bobba concluded Plaintiff was capable of [simple repetitive tasks] on a sustained basis, and affirmed Dr. Frye's assessment "as written." *Id.* at 531.

B.   Hearing Testimony

*Plaintiff's testimony*

Plaintiff testified before an ALJ on June 3, 2009. AR at 22. Plaintiff reported that she lived in a mobile home with her four children and her husband. *Id.* at 24. Plaintiff said she was able to drive herself, and take care of personal grooming needs without assistance. *Id.* Further, Plaintiff stated she cooked, though not frequently, and had her children help with the laundry and dishes. *Id.* Plaintiff said her children helped also with cleaning, such as vacuuming and mopping, due to the pain in her arms. *Id.* at 25. Plaintiff reported that she liked to read, and visit with friends and relatives and she did "some walking . . . and some swimming." *Id.* at 27. . Plaintiff said she worked as a tutor during the first semester of her school year in 2007. AR at 28. Plaintiff explained she worked "only like an hour at a time after class and it wasn't every day." *Id.* During the second semester of this same school year, Plaintiff watched her sister's children "a couple days a week after school." *Id.* at 28.

Plaintiff estimated she watched television for an hour a day. AR at 26. In addition, Plaintiff reported she was taking an on-line college course, which required to her to study for class seven to eight hours a week and use a computer "at least 10 to 14 hours a week." *Id.* Plaintiff said she was unable to use a computer "for a long period of time because of [her] headaches," and estimated she

used the computer for "an hour-and-a-half or two hours" at a time. *Id.* at 26-27. According to Plaintiff, she was able to concentrate studying for a half an hour at a time. *Id.* at 42.

Plaintiff said Valenzuela provided treatment for her problems. AR at 31. Plaintiff reported she had fibromyalgia, nausea, vertigo, urinary frequency, sensitivity to sunlight, "tingling" in her arms and legs, and headaches that sometimes caused her to see spots. AR at 30, 33, 38-40. Plaintiff said she awoke every day with a headache, which was "worse in the morning." *Id.* at 34. Plaintiff reported pain in her heck, shoulder and stomach made it "hard to get out of bed." *Id.* at 33-34. In addition, Plaintiff said she had to use a restroom every hour and a half and had received treatment for urinary tract infections, but she had not seen an urologist. *Id.* at 38-39. Plaintiff stated she was unable to "sit for too long of a period of time" and "need[ed] to move around" because of her pain. *Id.* at 32. Also, Plaintiff reported she would lay down for about half an hour twice a day to help with the pain. *Id.* at 41-42. Plaintiff reported medication "hasn't really helped all that much," and she was "in more pain after standing up from sitting down for a while." *Id.* at 40. Plaintiff estimated she could sit for half an hour, stand for "20 minutes or a half hour," and walk a half a mile. *Id.* at 32-33. Plaintiff believed she could lift and carry "probably 30, 35 pounds." *Id.* at 33.

According to Plaintiff, she also suffered from depression. AR at 30. Plaintiff said she attended therapy sessions with a counselor "[e]very couple of weeks" and saw a "psychiatrist for medication" every three months. *Id.* at 32. Plaintiff said she was unable to talk about her depression issues because if she started talking about it, she would cry. *Id.* at 35. Plaintiff said she had anxiety issues as well, but tried "to act like everything's okay." *Id.* at 43. Plaintiff said she no longer heard voices, and did not "pay much attention to" the shadows she saw. *Id.* Plaintiff explained, "I have been in a mental institution and I don't want to dwell on those types of things because . . . I don't want to be back there." *Id.*

*Vocational expert's testimony*

Vocational expert ("VE") Jose Shapiro testified after Plaintiff. The ALJ noted there was no past relevant work, and asked the VE to consider hypothetical individuals of the same age and education of Plaintiff. AR at 44-45. First, the VE considered a person who could lift 50 pounds occasionally and 25 pounds frequently; and sit, stand, and/or walk six out of eight hours. *Id.* at 45.

The VE concluded such a person "could do the world of unskilled, sedentary, light, and medium work." *Id.* As examples of medium, unskilled work, the VE named the positions of caretaker/housecleaner, DOT 301.687-010 and cook helper, DOT 317.687-010. *Id.*

Next, the VE considered an individual who had the ability to lift 20 pounds occasionally and 10 pounds frequently; and sit, stand and/or walk six hours in an eight-hour day. AR at 45-46. The VE opined such a worker could perform work in the regional or national economy. *Id.* at 46. As examples, the VE identified "light and unskilled" positions including housekeeping/cleaner, DOT 323.687-014; cashier II, DOT 211.462-010; and fast food worker, DOT 311.472-010. *Id.* at 46. If a person with these physical limitations were limited to "simple routine and repetitive work," the VE opined work would be available. *Id.*

Likewise, the VE opined the work available would not be affected if "this person had to make frequent use of restroom facilities approximately . . . one time per hour for five minutes each." AR at 46-47. The VE observed that "people typically take restroom breaks throughout the day," and did not believe this restriction "would affect anything." *Id.* at 47. On the other hand, the VE concluded that if an individual required "two additional breaks per day of 30 minutes each," there were no available jobs in the regional or national economy. *Id.*

C.  The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity from the alleged onset date of September 15, 2005. AR at 12. Second, the ALJ found Plaintiff's fibromyalgia, headaches, and depression were severe impairments. *Id.* These impairments did not meet or medically equal a listing. *Id.* at 13. The ALJ determined Plaintiff had the residual functional capacity ("RFC") "to lift and/or carry 20 pounds occasionally and 10 pounds frequently; to stand or walk 6 hours in an 8-hour work day and sit for 6 hours in an 8-hour work day; and to perform simple, routine repetitive work." *Id.* at 14. The ALJ noted Plaintiff did not have past relevant work to which she could return. *Id.* at 17. However, the ALJ determined "there are jobs that exist in significant numbers in the national economy" that Plaintiff could perform with this RFC. *Id.* at 18. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 18-19.

**DISCUSSION AND ANALYSIS**

Plaintiff asserts the ALJ failed to provide clear and convincing reasons to reject her subjective complaints. AR at 10. According to Plaintiff, "The ALJ rejected [her] subjective complaints stating that 'she is able to handle a busy life with four children to care for.' [Citation] The ALJ also rejected [Plaintiff's] subjective complaints because she completed a course of study in her attempt to become a dental assistant." (Doc. 16 at 12) (citations omitted). Plaintiff concludes, "These reasons do not satisfy the clear and convincing standard." *Id.*

On the other hand, Defendant argues the credibility determination was supported by substantial evidence, and "the ALJ properly found that [Plaintiff's] testimony was not fully credible." (Doc. 17 at 8). Defendant asserts the ALJ considered Plaintiff's activities of daily living and the medical evidence. *Id.* at 8-9. Defendant contends, "[T]he ALJ did not have to believe Plaintiff's exaggerated symptoms because her extensive activities clearly required greater abilities than she alleged." *Id.* at 9.

A.  The ALJ failed to set forth clear and convincing reasons for rejecting Plaintiff's credibility.

When assessing credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citation omitted). Where the objective medical evidence shows an underlying impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse credibility finding must be based on clear and convincing reasons." *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Here, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR at 17. However, the ALJ believed Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are credible to the extent they are consistent with the . . . residual functional capacity assessment." *Id.* Consequently, the ALJ was required to set forth clear and convincing reasons for rejecting Plaintiff's testimony regarding her pain.

Factors that an ALJ may consider in a credibility determination include: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3)

the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony of physicians concerning the nature, severity, and effect of the symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v Barnhart*, 287 F.3d 947, 958-59 (9th Cir. 2002). Further, "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also* SSR 96-7p, 1996 SSR LEXIS 4, at *2-3 (the ALJ "must consider the entire case record, including the objective medical evidence" in determining credibility, but statements "may not be disregarded solely because they are not substantiated by objective medical evidence"). Here, the ALJ considered Plaintiff's daily activities and the objective medical evidence, which are relevant factors in a credibility determination. *See, e.g., Rollins*, 261 F.3d at 857 (medical evidence "is still a relevant factor" in a credibility determination); *Fair*, 885 F.2d at 603 ("testimony about the claimant's daily activities" may be relied upon to find a pain allegation incredible).

*Activities of daily living*

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999), citing *Fair*, 885 F.2d at 603. For example, a claimant's ability to cook, clean, do laundry and manage finances is sufficient to support an adverse finding find of credibility. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *see also Burch*, 400 F.3d at 680 (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances…"). Likewise, an ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). However, an ALJ must make a specific finding relating to the transferability of the activities to a work place to refute a Plaintiff's allegations of disability. *Orn v Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ observed: "The claimant testified that she watches her television perhaps an hour a day, reads about 7 to 8 hours a week and uses a computer 10 to 14 hours a week." AR at 14. Also, "She visits with family and friends and goes to church. She walks; walks her dog; and swims." *Id.* However, the ALJ failed to find Plaintiff's limited activities could be transferred to a work setting, or that Plaintiff spent a "substantial" part of her day engaged in such activities. *See Orn*, 495 F.3d at 639 (the ALJ erred in failing to "meet the threshold for transferable work skills, the second ground for using daily activities in credibility determinations"); *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Moreover, the Ninth Circuit opined, "Daily household chores and grocery shopping are not activities that are easily transferable to a work environment." *Blau v. Astrue*, 263 Fed. App'x 635, 637 (9th Cir. 2008). Consequently, Plaintiff's activities of daily living were not a clear and convincing reason to discount the credibility of her subjective complaints regarding pain and ability to concentrate.

*Objective medical evidence*

Generally, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999). However, in citing to the medical evidence as part of a credibility determination, it is insufficient for the ALJ to make a general statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, the ALJ "must state which pain testimony is not credible and what evidence suggests the claimants are not credible." *Dodrill*, 12 F.3d at 918; *see also Holohan*, 246 F.3d at 1208 ("the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony"). Because the ALJ failed to specify which portions of Plaintiff's testimony were not credible and to

identify the medical evidence refuting the testimony, the ALJ has not met his burden. Furthermore, even if the ALJ specifically identified medical evidence that refutes Plaintiff's subjective complaints, the medical record alone is not a clear and convincing reason to reject Plaintiff's testimony.

The ALJ failed to set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d at 885. Therefore, the findings adverse credibility determination cannot be upheld because the ALJ failed to set forth clear and convincing reasons supported by substantial evidence in the record.

B.   Remand is appropriate in this matter.

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004), citing *INS v. Ventura*, 537 U.S. 12, 16 (2002). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Heath & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988). The Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding [her] limitations, and the claimant would be disabled if her testimony were credited," the testimony could be credited as true, and remand is not appropriate. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Smolen*, 80 F.3d at 1292.

However, courts retain flexibility in crediting testimony as true. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true). A remand for further

proceedings regarding the credibility of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . ."). Notably, though the ALJ failed to properly reject Plaintiff's credibility using the proper legal standards, it is not clear that Plaintiff would be disabled if her testimony were credited as true. The ALJ purported to give Plaintiff "the benefit of the doubt in establishing the residual functional capacity," and did not specify what portions of her testimony he rejected or credited. AR at 17. In addition, based upon Plaintiff's complaints, several physicians opined Plaintiff had the ability to perform simple tasks. *See, e.g. id.* at 454, 488, 531. Consequently, the Court is unable to determine whether Plaintiff would be disabled, and remand is appropriate for this matter.

## **CONCLUSION**

For all these reasons, the Court concludes the ALJ erred in assessing Plaintiff's credibility as related to her subjective complaints of pain due and an inability to concentrate. Therefore, the Court will order the matter remanded for the ALJ to provide sufficient findings related to the medical evidence of record, and determine whether Plaintiff's limitations preclude her from work in the national economy. Because the Court finds remand is appropriate on this matter, it will not address the remaining issue of whether the ALJ properly rejected the mental limitations set forth by a non-examining physician.

Accordingly, **IT IS HEREBY ORDERED**:

1. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is **REMANDED** for further proceedings consistent with this decision; and

2. The Clerk of Court IS DIRECTED to enter judgment in favor of Plaintiff Anitra Summers and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **November 2, 2011**                             /s/ Jennifer L. Thurston
                                                        UNITED STATES MAGISTRATE JUDGE